UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 00-3741-Civ-Huck
Magistrate Judge Brown

SUN TRUST BANK, MIAMI, as Personal Representative
of the Estate of CHAD HUMPHREYS, Deceased,

Plaintiff,

vs.

SUN INTERNATIONAL HOTELS LIMITED,
a Bahamian company; and SUN INTERNATIONAL
BAHAMAS LIMITED, a Bahamian company,

Defendants.
_____/

## NOTICE OF FILING AFFIDAVIT OF CEDRIC PARKER

Plaintiff, SUN TRUST BANK, MIAMI, as Personal Representative of the Estate of

CHAD HUMPHREYS, hereby gives notice of filing this affidavit of Cedric Parker in opposition

to defendants' motion to dismiss plaintiff's complaint for lack of personal jurisdiction, improper

venue and forum non conveniens.

Respectfully submitted,

HICKS, ANDERSON & KNEALE, P.A.
799 Brickell Plaza, 9th Floor
Miami, Florida 33131
(305) 374-8171 - Telephone
(305) 372-8038 - Facsimile

By: _____
DINAH STEIN
Fla. Bar No. 98272



CASE NO. 00-3741-CIV-HUCK

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was served via hand delivery on **August 9, 2001**, to:

Fred O. Goldberg, Esq.
Berger Singerman
200 South Biscayne Boulevard
Suite 1000
Miami, FL 33131-5308
Tel:    305/755-9500
Fax:    305/714-4340

HAGGARD, PARKS, HAGGARD
& BOLOGNA, P.A.
330 Alhambra Circle, First Floor
Coral Gables, FL 33134
Tel:    305/446-5700
Fax:    305/446-1154

HICKS, ANDERSON & KNEALE, P.A.
799 Brickell Plaza, 9th Floor
Miami, FL 33131
Tel:    305/374-8171
Fax:    305/372-8038

By: _____
DINAH STEIN
Fla. Bar No. 98272

g  humphreys-pldg nof aff parker doc

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 00-3741-Civ-Huck
Magistrate Judge Brown

SUN TRUST BANK, MIAMI, as Personal Representative
of the Estate of CHAD HUMPHREYS, Deceased.

Plaintiff,

vs.

SUN INTERNATIONAL HOTELS LIMITED,
a Bahamian Company; and SUN INTERNATIONAL
BAHAMAS LIMITED, a Bahamian Company,

Defendants

_____/

### AFFIDAVIT IN OPPOSITION TO DEFENDANTS MOTIONS TO DISMISS PLAINTIFF'S COMPLAINT FOR LACK OF PERSONAL JURISDICTION, IMPROPER VENUE AND FORUM NON CONVENIENS

**I, CEDRIC L. PARKER,** Counsel and Attorney-at-Law, Nassau, Bahamas make

oath and say as follows:

1.    That I am a counsel and attorney-at-law in practice at The Bahamas Bar

since August 21st, A.D., 1981. I hold a Bachelors of Science degree in Economy (Hons.) from

the University of the West Indies and I qualified to practice at The Bahamas Bar via Articles of

Clerkship between the years 1977 – 1981. I established my firm as a sole practitioner during the

month of March 1982 and have so continued to date. I was attached during clerkship to the Hon.

J. Henry Bostwick Q.C. senior partner in the firm of Bostwick & Bostwick here in Nassau. My practice is now restricted primarily to civil litigation (as Barrister to several other firms and on my firm's behalf), corporate, estate, and real property matters. My curriculum vitae is attached as Exhibit "A".

2.      I make this Affidavit as an adviser on Bahamian law to Robert L. Parks, Esquire, attorney of record for the Plaintiff in this matter.

3.      This Affidavit addresses the remedies available to the Plaintiff in this matter under Bahamian law. Specifically, this Affidavit will discuss the damages available to an estate of a twelve-year old decedent for wrongful death in an action brought in the Bahamas.

4.      The general Principles of the Law of Negligence as a feature of Bahamian Jurisprudence is derived from English common law. Under these principles and the facts of this case, Chad's estate would be entitled to recover nominal damages only, restricted to funeral and related costs, if these costs were paid by a person entitled to claim under the Fatal Accidents Act (eg. a parent). There is however one exception to this general principle as is set out in paragraph 5 hereof.

5.      Under Bahamian law, a Plaintiff bringing an action for wrongful death is only entitled to loss and economic damages, such as lost wages and loss of financial support. Where the deceased was below the age of majority, as in this instance, the lost economic damages are restricted to reasonable expectation of economic benefit. Such expectation must be founded upon facts which demonstrated the decedent's inclination or predisposition towards bestowing financial assistance upon the person entitled to claim under the Act.

-3-                                    *Case No. 00-3741-Civ-Huck*

          Reasonable expectation of economic benefit has been inferred by the Court in

favour of a parent in the case of minors who were employed or apprenticed and who assisted a

parent financially. The actual involvement of a minor in a trade, job, or other economically

beneficial activity is essential. Anything less would render the claimant's expectation of

economic benefit unreasonable as being too speculative. Should the expectation be purely

speculative the claim must fail. Additionally I believe that there are no circumstances under the

facts of the instant case which would permit a Bahamian Court to find reasonable expectation of

economic benefit in favour of anyone entitled to claim under the Act. Thus, under Bahamian law

Chad's estate does not have any ability to recover economic damages in this action arising out of

lost earnings, services or reasonable expectation of financial support.

          6.      There is also no entitlement to intangible damages under Bahamian law.

Thus, if Chad's estate were to bring an action in the Bahamas, the estate and its beneficiaries

would not be able to recover any damages for emotional losses suffered by the survivors such as

mental pain and suffering. There would additionally be no entitlement to recover damages for

the intangible losses suffered by Chad, such as pain and suffering.

          7.      It is also clear under Bahamian law that contingency fee contracts of

representation are impermissible in the Bahamas and taking cases on such a basis directly

violates CH. 44, the Bahamas Bar Regulations (Code of Professional Conduct), Rule X. A copy

of Rule X is attached as Exhibit "B" and provides "an attorney should not enter into any

agreement or stipulate payment only in the event of success in any suit, action or other

contentious proceedings for which he is retained or employed to prosecute." Accordingly, the estate of Chad Humphreys may be prevented from continuing its action in a Bahamian forum if unable to afford and pay an hourly fee and monthly cost bills. My customary hourly fee, which is reasonable and typical of attorneys of my experience and reputation, is $450.00.

8.     If this action brought by the estate of Chad Humphreys were to be re-filed in a Bahamian Court, the Estate's present attorney, Robert L. Parks, would be prohibited from prosecuting this action on its behalf in a Bahamian Court. Mr. Parks, although a Bahamian citizen, does not meet the qualifications of admission to the Bahamas Bar.     A coy of the qualifications for admission to practice in the Bahamas is attached as Exhibit "C".     These requirements must be satisfied even to prosecute a single isolated action in a Bahamian Court.

9.     Moreover by virtue of Order 23 of the Rules of the Supreme Court, in civil actions before the Bahamian Courts where the Plaintiff is resident outside the jurisdiction or has no substantial assets within the jurisdiction an application may be made to the Court to have the Plaintiff give security for costs and the judge has the power in his sole discretion to make such an Order with which the Plaintiff must comply in order for proceedings to be continued thereafter in this jurisdiction. See O.23 attached as Exhibit "D".

10.    A further hindrance to the estate of Chad Humphrey's estate's re-filing its action in a Bahamian Court is the probability that if unsuccessful at trial, it could be compelled to pay the Defendants' attorney fees and costs, as well as its own. See Bahamian Supreme Court Rules O.59 r.3, attached as Exhibit "E" and the corresponding English Supreme Court Rules Order 62 r.3 attached as Exhibit "F".

11.     The prevailing party's costs and attorney fees are usually taxed against the losing party, although it is within the discretion of the court not to do so. The typical award of fees and costs awarded to the prevailing party is in the range of Sixty to Seventy percent.

12.     The current condition of the Bahamian Court system is such that it likely would take two to three years for the estate of Chad Humphreys' case to get to trail. This is not because of lack of efficiency in the court system, but rather is due to the paramount status presently afforded criminal actions.

13.     It must also be noted that under Bahamian Law the Courts have no power to compel foreign persons living abroad and out of its jurisdiction to give evidence in its Courts. The only way this can be done is by letters Rogatory which is a complicated, protracted and expensive process.

14.     In my opinion it unlikely that the Bahamian Court would grant the estate of Chad Humphreys a jury trial. The Juries Act, Chapter 47, expressly provides for trials by jury in civil proceedings, and, procedurally, the rules of our Supreme Court also provide for trial by jury in civil cases by Order 33, Rule 2. However, Orders for trial by jury are rarely made in civil cases. The principles to be applied in determining whether or not a court will allow a jury trial are found in the notes to Order 33 of the English Rules of the Supreme Court.   In actions for wrongful death, a jury trial will not be ordered unless there are exceptional circumstances.   In Bahamian law it is not an exceptional circumstance that the injuries are severe, nor that they are unusual.   Bahamian courts rarely, if ever, hear civil trials by jury.   In practice, civil trials are never heard by juries except in some defamation cases in the Bahamas.   Moreover, Section 36 of

-6-                              *Case No. 00-3741-Civ-Huck*

the Juries Act states that nothing contained in the Act shall extend or be construed to extend to

alter, abridge or affect any power or authority which the Court or judge now has or any **practice**

or **forum** in regard to trials by jury.   Accordingly, even though the Act envisions civil trials by

jury, the saving provisions in Section 36 may well preclude a Plaintiff or a Defendant from

hearing a civil trial heard by jury, should a judge refuse to exercise his discretion to allow same.

See Order 33, Rule 2, attached as Exhibit "G" and Section 36 of the Juries Act, Chapter 47, as

Exhibit "H".

        15.    Further affiant sayeth naught.


SWORN to at Nassau, The Bahamas )

this 7th day of August, A.D., 2001   )

        Before me,


                                       NOTARY PUBLIC


My commission Expires: _____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 00-3741-Civ-Huck
Magistrate Judge Brown

SUN TRUST BANK, MIAMI, as Personal Representative
of the Estate of CHAD HUMPHREYS, Deceased.

Plaintiff,

vs.

SUN INTERNATIONAL HOTELS LIMITED,
a Bahamian Company; and SUN INTERNATIONAL
BAHAMAS LIMITED, a Bahamian Company,

Defendants

_____/

## CERTIFICATE

**THIS IS** the Exhibit marked "Exhibit A" mentioned and referred to in the

Affidavit of **CEDRIC L. PARKER** dated the 8th day of August, A.D., 2001 before me,

*Meriam Curling*

NOTARY PUBLIC

# CEDRIC L. PARKER
*Curriculum Vitae – 7th August 2001*

**BORN:**

1st September 1949
Abaco, Bahamas.

**EDUCATION:**

All age School, Fox Town,
Abaco, Bahamas.

The Government High School,
Nassau, Bahamas.

Bahamas Teachers College,
Nassau, Bahamas.
(UWI Institute of Education Programme)

University of the West Indies
Kingston, Jamaica
B.Sc. Degree, Economics (Hons.)

Articles of Clerkship to Hon. J. Henry Bostwick, Q.C.

**PROFESSIONAL
QUALIFICATIONS:**

Counsel & Attorney of the Supreme Court of The Bahamas

Called to the Bahamas Bar – 21st August 1981

**PROFESSIONAL
ASSOCIATIONS:**

Member of:      The Bahamas Bar Association

The Bahamas Bar Disciplinary Committee
(Past)

**BOSTWICK & BOSTWICK:**

Articles of Clerkship 1977 - 981

Associate 1981 – 1982

**CEDRIC L. PARKER:
Counsel & Attorney at law
(a firm)**

Established March 1982
Sole practitioner

-2-

| | |
|---|---|
| **AREA OF PRACTICE:** | Civil litigation, criminal defence, labour law, company law, conveyancing & all areas of real property, estate matters. Trusts (asset protection) (Criminal & labour law practice discontinued since 1993). |
| **OTHER:** | Principal, Abaco Central High School 1974 – 1976 |

Executive Member of Bahamas Union of Teachers (BUT) 1974 – 76

Founding Chairman, BUT Abaco Branch – 1975

Senior Master, the Government High School, Nassau 1976 – 1977

United World College Scholarship Committee – 1976 (BUT)

Director – Bahamasair Holdings Ltd. (National Airline of the Bahamas) 1992 –1994

Member of the National Council of Free National Movement (Present governing party of the Bahamas) 1976 – 2001.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 00-3741-Civ-Huck
Magistrate Judge Brown

SUN TRUST BANK, MIAMI, as Personal Representative
of the Estate of CHAD HUMPHREYS, Deceased.

Plaintiff,

vs.

SUN INTERNATIONAL HOTELS LIMITED,
a Bahamian Company; and SUN INTERNATIONAL
BAHAMAS LIMITED, a Bahamian Company,

Defendants

_____/

CERTIFICATE

**THIS IS** the Exhibit marked "Exhibit B" mentioned and referred to in the

Affidavit of **CEDRIC L. PARKER** dated the 8th day of August, A.D., 2001 before me,

*Miriam Curley*

NOTARY PUBLIC

3. In the context of the foregoing paragraph, persons closely related to or associated with the attorney include his spouse, son or daughter, any relative of the attorney (or of his spouse) who lives under the same roof, a trust or estate in which the attorney has a substantial beneficial interest or for which he acts as a trustee or in a similar capacity, and a corporation of which the attorney is a director or in which he or some person closely related to or associated with him holds or controls, directly or indirectly, a significant number of shares.

4. Subject to any special rules applicable to the particular public office, the attorney holding such office should, when he sees that there is a possibility of a conflict of interest, disqualify himself by declaring his interest at the earliest opportunity, and he should not take part in any consideration or discussion of or vote with respect to the matter in question.

5. When the attorney or any of his partners or associates is a member of an official body he should not appear professionally before that body. However subject to the rules of the official body it would not be improper for him to appear professionally before a committee of such body if such partner or associate is not a member of that committee.

6. The attorney should not represent in the same or any related matter any persons or interests with whom he has been concerned in an official capacity. Likewise, he should avoid advising upon a ruling of an official body of which he is a member or of which he was a member at the time the ruling was made.

7. By way of corollary to the Rule, relating to Confidential Information, confidential information acquired by the attorney by virtue of his holding public office should be kept confidential and should not be divulged or used by him merely because he has ceased to hold such office.

8. Generally speaking, the Bar Council will not be concerned with the execution of the official responsibilities of a lawyer holding public office, but if his conduct in office reflects adversely upon his integrity or his professional competence, he may be subject to disciplinary action.

---

Rule X.                    FEES.

The attorney should not

(a) stipulate for, charge or accept any fee which is not fully disclosed, fair and reasonable;

(b) appropriate any funds of his client held in trust or otherwise under his control for or on account of his fees

without the express authority of his client, except in accordance with the custom or accepted practice of the profession:

(c) enter into any agreement or stipulate payment only in the event of success in any suit, action or other contentious proceedings for which he is retained or employed to prosecute.

#### Commentary.

1. A fair and reasonable fee will depend upon and reflect such factors as

(a) the time and effort required and spent;

(b) the difficulty and importance of the matter;

(c) whether special skill or service has been required and provided;

(d) the customary charges of other attorneys of equal standing in like matters and circumstances;

(e) the amount involved or the value of the subject matter;

(f) the results obtained;

(g) scales advised by the Bar Association;

(h) such special circumstances as loss of other employment, uncertainty of reward, and urgency.

A fee will not be fair and reasonable if it is one which cannot be justified in the light of all pertinent circumstances, including the factors mentioned, or is so disproportionate to the services rendered as to introduce an element of fraud or dishonesty.

2. It is in keeping with the best traditions of the legal profession to reduce or waive a fee in a situation where there is hardship or poverty, or the client or prospective client would otherwise effectively be deprived of legal advice or representation.

3. Breach of this Rule and misunderstandings respecting fees and financial matters bring the legal profession into disrepute and reflect adversely upon the general administration of justice. The attorney should try to avoid controversy with his client with respect to fees, and he should be ready to explain the basis for his charges (especially if the client is unsophisticated or uninformed as to the proper basis and measurements for fees). He should give the client a fair estimate of fees and disbursements, pointing out any uncertainties involved, so that the client may be able to make informed decisions. When something unusual or unforseen occurs which may substantially affect the amount of the fee, the attorney should forestall misunderstandings or disputes by explanations to his client.

Whilst there may be special circumstances in particular cases which justify the quotation or acceptance of a fee less than the minimum scale as advised from time to time by the Bahamas Bar

Association it is generally considered improper deliberately to undercut fees by quoting or accepting a reduced fee from any prospective new client and especially if it is known or there are reasonable grounds to believe that such person is or has been represented by another attorney in The Bahamas.

4. The attorney should not charge his client interest on an overdue account unless permitted by law, and then only after adequate notice to the client.

5. In matters where the attorney is acting for two or more clients on the same side it is his duty to divide his fees and disbursements equitably between them in the absence of agreement otherwise.

6. A fee will not be a fair one within the meaning of the Rule if it is divided with another attorney who is not a partner or associate unless (a) the client consents, either expressly or impliedly to the employment of the other attorney, and (b) the fees are divided in proportion to the work done and responsibilities assumed.

7. The fiduciary relationship between the attorney and his client requires full disclosure in all financial matters between them and prohibits the acceptance by the attorney of any hidden fees. No fee, reward, costs, commission, interests, rebate, agency or forwarding allowance or other compensation whatsoever related to professional employment may be taken by the attorney from anyone other than the client without full disclosure to and the consent of the client or, where the attorney's fees are being paid by someone other than the client such as a borrower, or a personal representative, the consent of such other. So far as disbursements are concerned, only bona fide and specified payments to others may be included, and if the attorney is financially interested in the person to whom the disbursements are made, such as an investigating, brokerage or copying agency, he must expressly disclose this fact to his client.

8. It is the generally accepted practice in real estate transactions and collection matters for the attorney to deduct his fees and disbursements from moneys paid to him on behalf of his client.

Rule XI.                    WITHDRAWAL.

The attorney owes a duty to his client not to withdraw his services except for good cause and upon notice appropriate in the circumstances.

*Commentary.*

1. Although the client has the right to terminate the lawyer-client relationship at will, the attorney has no such freedom of

action. Having accepted professional employment he should complete the task to the best of his ability unless there is justifiable cause for his terminating the relationship.

2. In all situations where the attorney withdraws from employment he should act so as to minimize expense and avoid prejudice to his client, and do all that he reasonably can to facilitate the orderly transfer of the matter to the attorney who succeeds him.

3. Where withdrawal by the attorney is required or permitted by this Rule he must comply with all applicable rules of the court, and, where required by rules or practice, obtain the court's permission to withdraw.

4. In some circumstances the attorney will be under a positive duty to withdraw. The obvious case is where he is discharged by the client. Other examples are (a) if he is instructed by his client to do something inconsistent with his duty to the court and if, following explanation, the client persists in his instructions; (b) if the client is guilty of dishonourable conduct in the proceedings or is taking a position solely to harass or maliciously injure another; (c) if it becomes clear that the attorney's continued employment will involve him in a breach of this Code, such as for example a breach of the Rule relating to Impartiality and Conflict of Interest; or (d) if the attorney discovers that he is not competent to handle the matter. In these situations it will be the attorney's duty to inform his client that he must withdraw.

5. Situations where an attorney would be entitled to withdraw, although not under a positive duty to do so, will usually only arise where there has been a serious loss of confidence between the attorney and the client. Such a loss of confidence goes to the very basis of the relationship. Thus, if the attorney is deceived by his client he will have justifiable cause for withdrawal. Again, the refusal of the client to accept and act upon the attorney's advice on a significant point might indicate such a loss of confidence. However, the attorney should not use the threat of withdrawal as a device to force a hasty decision by his client on a difficult question.

6. Failure on the part of the client after reasonable notice to provide funds on account of disbursements or fees would also justify withdrawal by the attorney, if no serious prejudice to the client would result.

7. No hard and fast rules can be laid down as to what will constitute reasonable notice prior to withdrawal. Where the point is covered by statutory provisions or rules of court, these will govern. In other situations the attorney must be governed by the basic principle that he should protect his client's interests to the best of his ability and that he should not desert his client at a

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 00-3741-Civ-Huck
Magistrate Judge Brown

SUN TRUST BANK, MIAMI, as Personal Representative
of the Estate of CHAD HUMPHREYS, Deceased.

Plaintiff,

vs.

SUN INTERNATIONAL HOTELS LIMITED,
a Bahamian Company; and SUN INTERNATIONAL
BAHAMAS LIMITED, a Bahamian Company,

Defendants

_____/

CERTIFICATE

**THIS IS** the Exhibit marked "Exhibit C" mentioned and referred to in the

Affidavit of **CEDRIC L. PARKER** dated the 8th day of August, A.D., 2001 before me,

*Miriam Curling*

NOTARY PUBLIC



No. 26 of 1992

An Act to make provisions with respect to the practice of
law by persons in The Bahamas, for the admission of
persons to such practice, for the creation of a
registered associate and legal executive, for the
conduct and discipline of registered associates, legal
executives and persons admitted to practice, and for
matters incidental to or connected with the aforesaid
matters.

Date of Assent: 30th June, 1992

Enacted by The Parliament of The Bahamas.

## PART I

### Preliminary

1. This Act may be cited as the Legal Profession Act, 1992 Short title and commencement.
and shall come into operation on such date as the Attorney-
General may appoint by notice in the Gazette.

2. In this Act — Interpretation.

"admit to practice" means admit to practice as counsel and
attorney in the courts of The Bahamas;

"appointed day" means the date appointed under section 1;

"articles" means written articles of clerkship binding a
person to serve a counsel and attorney as an articled
clerk;

"Bar" means the Bar of The Bahamas;

5

other than by effluxion of time, the President of the Bar
Association or the Vice-President, or if neither of them is able to
do so the Attorney-General, shall as soon as practical summon a
meeting of the Association for the purpose of electing a member
to fill the vacancy.

(3) At a meeting held under subsection (1) or (2) the
election shall be conducted by ballot in the prescribed manner.

7.—(1) Subject to subsection (2), at any meeting of the Bar
Association, thirty members constitute a quorum.

*Quorum of Bar Association.*

(2) If within the period of thirty minutes after the time of
commencement of a meeting of the Bar Association thirty
members are not present, the President shall adjourn the meeting
for one week, and if when the meeting is convened thirty
members are not present within the thirty minute period, the
members present shall constitute a quorum.

8.—(1) The President of the Bar Association shall be the
Chairman, and the Vice-President of the Bar Association shall be
the Vice-Chairman, of the Bar Council.

*Chairman and Vice-Chairman of Bar Council.*

(2) At every meeting of the Bar Council the Chairman, or
in his absence the Vice-Chairman, shall preside and if both the
Chairman and the Vice-Chairman are absent from a meeting any
other member selected by the members present shall preside.

9.—(1) The quorum for any meeting of the Council shall be
five.

*Quorum and procedure of Bar Council.*

(2) Subject to this Act, the Bar Council may make its own
rules of procedure.

### PART III.

### Counsel and Attorneys

10.—(1) No person shall be admitted to practice unless he
is qualified in accordance with Part A, B or C of the First
Schedule and is not disqualified for admission under subsection
(2).

*Qualifications and disqualifications for admission to practice. First Schedule.*

(2) A person shall be disqualified for admission to
practice —

      (a) unless the Bar Council otherwise determines, if he
           has been disqualified for or suspended from

6

practice in the courts of any place outside The Bahamas and such disqualification or suspension is in force at the date of his application for such admission;

(b) if he is, in the opinion of the Bar Council, not of good character; or

(c) save in the case of a person appointed to a legal public office or of a person applying for special admission, if he is not a citizen of The Bahamas.

Special admission.

First Schedule.

11. Notwithstanding anything to the contrary in this Act, the Bar Council, upon being satisfied that the interests of justice so require, may determine that any person qualified in accordance with the First Schedule shall be specially admitted to practice for the purpose of conducting particular proceedings specified in such determination, and shall give notice of its determination to the Chief Justice.

Application for admission.

Second Schedule.

12.—(1) Any person desiring to be admitted to practice or to be specially admitted shall make application to the Bar Council in such form as the Council may require, attaching to the application the appropriate certificate or certificates in accordance with the Second Schedule and an affidavit declaring —

(a) that any certificate produced in support of the application is a true certificate and relates to the applicant;

(b) that the applicant is not suspended from or disqualified for practice in the courts of any place outside The Bahamas and has not done any act or been guilty of any omission which would render the applicant liable to be so suspended or disqualified; and

(c) save in the case of a person appointed to a legal public office or of a person applying for special admission, that the applicant is a citizen of The Bahamas.

(2) Where upon receipt of an application made under subsection (1) the Bar Council is satisfied that the applicant is qualified to be admitted to practice or to be specially admitted, the Council shall so determine and shall give notice of its determination to the Chief Justice; but in every case where the Council is minded to refuse to make a determination the Council shall afford to the applicant an opportunity to show cause,

7

whether by representation in writing or, if the applicant so desires, orally before the Council, why such a determination should be made.

13.—(1) Upon receipt of notice of a determination of the Call to the Bar. Bar Council under section 11 or subsection (2) of section 12 in relation to any person and upon payment by that person of the prescribed fee, the Chief Justice shall admit the person by calling him to the Bar in such manner as the Chief Justice thinks fit.

(2) Every person upon being called to the Bar shall take before the Chief Justice the oath prescribed in the Third Schedule Third Schedule. and shall inscribe his name in the Roll or Supplementary Roll, as the case may be.

14. Every person admitted to practice other than a person Certificate of specially admitted is entitled to receive from the Registrar a enrolment. certificate of enrolment under the seal of the Court.   -   •

15.—(1) A counsel and attorney may apply to the Attorney Appointment of General for appointment as one of Her Majesty's Counsel. Queen's Counsel.

(2) The Attorney-General, after consultation with the Chief Justice, the President of the Bar Association and such other persons as the Attorney-General sees fit, may recommend to the Prime Minister the appointment of the applicant.

(3) Upon receipt of a recommendation from the Attorney-General the Prime Minister may advise the Governor-General to appoint the applicant as one of Her Majesty's Counsel.

(4) Every counsel and attorney who is immediately before the appointed day or who thereafter is appointed a Queen's Counsel shall be a member of the Inner Bar and entitled to use the suffix Q.C. immediately after his respective family name.

16.—(1) The Registrar shall keep in such form as the Chief Roll. Justice may direct a roll, to be called the Roll of the Court, in which persons admitted to practice shall inscribe their names as required by section 13.

(2) The Registrar shall create and maintain in the Roll a part wherein is entered the counsel and attorneys who have been accorded the rank of Queen's Counsel in accordance with this Act.

17. The Registrar shall keep in such form as the Chief Supplementary Justice may direct a roll, to be called the Supplementary Roll of Roll.

28

Transitional
provisions Ch.
44.

58.—(1) Subject to subsections (2) and (3) the Bahamas Bar Act (hereinafter referred to as the repealed Act) is repealed.

(2) The Roll of the Court maintained by the Registrar under section 15 of the repealed Act shall be deemed to continue in force on and after the appointed day as the Roll of the Court under section 16 of this Act and every person enrolled therein immediately before the appointed date shall be deemed on and after that day, subject to Part IV of this Act, to be a person duly admitted to practice under this Act.

(3) Any person who immediately before the appointed day was serving a counsel and attorney in actual practice in The Bahamas under articles of clerkship shall on and after that day be deemed to be lawfully serving that counsel and attorney under articles for the purposes of Part VI of this Act and, notwithstanding anything to the contrary in this Act, shall be entitled to credit under this Act for the entire period so served continously preceding that day (but without prejudice to the exercise by the Bar Council of any of its powers under this Act on or after that day); and nothing in this Act shall be construed as preventing any such counsel and attorney from retaining as an articled clerk any such person who was serving him under articles immediately before that day.

(4) The repeal made by subsection (1) shall not be construed or have the effect of disentitling a person from being admitted to practice in accordance with the provisions of the repealed Act and who was, immediately prior to the repeal, undergoing or had completed a period of articles of clerkship that would enable that person to be so admitted.

FIRST SCHEDULE — SI 58/96
(Sections 10, 11, 19(3), 54)

QUALIFICATIONS FOR ADMISSION

Part A

A person is qualified for admission to practice under this Part of this Schedule if —

> (a) he has been called to the Bar of England, Scotland, Northern Ireland or Eire, or of such other country, whether within the Commonwealth or not, as may be prescribed; or

29

(b) he has been admitted to practice as a solicitor in the Supreme Court of England, Scotland, Northern Ireland or Eire, or of such other country, whether within the Commonwealth or not, as may be prescribed.

### Part B

A person is qualified for admission to practice under this Part of this Schedule if he has been awarded a Legal Education Certificate by the Council of Legal Education of the West Indies.

### Part C

A person is qualified for admission to practice under this Part of this Schedule if he —

(a) holds a degree in law from a university or institution approved by the Bar Council and the Council of Legal Education of the West Indies as being academically equivalent to a Bachelor of Laws degree from the University of The West Indies;

(b) is a person who completed the period of articleship required by subsection (2) of section 43 with a counsel and attorney in actual practice in The Bahamas and such articles began on or before the expiration of two years from the appointed day or on such later date as the Attorney-General may by order designate;

(c) has passed the examinations approved by the Bar Council and the Council of Legal Education of the West Indies for the purposes of this Part;

(d) has completed to the satisfaction of the Council of Legal Education of the West Indies a six-month course of legal training organised by the Council of Legal Education of the West Indies.

Deleted by
S 2 No 6 of 1997
Assent: 6/2/97.

30

## SECOND SCHEDULE  (Section 12)

### QUALIFICATIONS FOR ADMISSION
Certificates to Accompany Application for Admission.

*Qualification*

*Certificate*

Where the qualification claimed falls under Part A of the First Schedule.

A certificate from the competent authority in the country in which the applicant claims to have been called to the Bar or admitted to practice, as the case may be, that the applicant has been so called or admitted to practice.

2.  Where the qualification claimed falls under Part B of the First Schedule.

A Legal Education Certificate from the Council of Legal Education of the West Indies.

3.  Where the qualification claimed falls under Part C of the First Schedule.

(a) A certificate from the university establishing, in the opinion of the Bar Council, that the applicant has passed the final examination of that university and has been awarded a first degree in law;

(b) a certificate from the Bar Council that the applicant has passed the examination approved by the Bar Council for the purposes of Part C;

(c) a certificate from each of the counsel and attorneys whom the applicant has served as an articled clerk sufficient to establish that the applicant has served such period of articles as is required by or under section 43; and

(d) a certificate from the Council of Legal Education of the West Indies that the applicant has satisfactorily completed a six month course of legal training organised by the Council.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 00-3741-Civ-Huck
Magistrate Judge Brown

SUN TRUST BANK, MIAMI, as Personal Representative
of the Estate of CHAD HUMPHREYS, Deceased.

Plaintiff,

vs.

SUN INTERNATIONAL HOTELS LIMITED,
a Bahamian Company; and SUN INTERNATIONAL
BAHAMAS LIMITED, a Bahamian Company,

Defendants

_____/

CERTIFICATE

**THIS IS** the Exhibit marked "Exhibit D" mentioned and referred to in the

Affidavit of **CEDRIC L. PARKER** dated the 8th day of August, A.D., 2001 before me,

*Miriam Curling*

NOTARY PUBLIC



# EXTRAORDINARY

# OFFICIAL GAZETTE
# BAHAMAS

### PUBLISHED BY AUTHORITY

| NASSAU | 5th July, 1978 |
|--------|----------------|

OFFICIAL GAZETTE

**Saving for enactments (O.23, r.3).**

3. This Order is without prejudice to the provisions of any enactment which empowers the Court to require security to be given for the costs of any proceedings.

---

### ORDER 24
(R.S.C. 1978)

### DISCOVERY AND INSPECTION OF DOCUMENTS

**Mutual discovery of documents (O.24, r.1).**

1.—(1) After the close of pleadings in an action begun by writ there shall, subject to and in accordance with the provisions of this Order, be discovery by the parties to the action of the documents which are or have been in their possession, custody or power relating to matters in question in the action.

(2) Nothing in this Order shall be taken as preventing the parties to an action agreeing to dispense with or limit the discovery of documents which they would otherwise be required to make to each other.

**Discovery by parties without order (O.24, r.2).**

2.—(1) Subject to the provisions of this rule and of rule 4, the parties to an action between whom pleadings are closed must make discovery by exchanging lists of documents and, accordingly, each party must, within 14 days after the pleadings in the action are deemed to be closed as between him and any other party, make and serve on that other party a list of the documents which are or have been in his possession, custody or power relating to any matter in question between them in the action.

Without prejudice to any directions given by the Court under Order 16, rule 4, this paragraph shall not apply in third party proceedings, including proceedings under that Order involving fourth or subsequent parties.

(2) Unless the Court otherwise orders, a defendant to an action arising out of an accident on land due to a collision or apprehended collision involving a vehicle shall not make discovery of any documents to the plaintiff under paragraph (1).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 00-3741-Civ-Huck
Magistrate Judge Brown

SUN TRUST BANK, MIAMI, as Personal Representative
of the Estate of CHAD HUMPHREYS, Deceased.

Plaintiff,

vs.

SUN INTERNATIONAL HOTELS LIMITED,
a Bahamian Company; and SUN INTERNATIONAL
BAHAMAS LIMITED, a Bahamian Company,

Defendants

_____/

CERTIFICATE

**THIS IS** the Exhibit marked "Exhibit E" mentioned and referred to in the

Affidavit of **CEDRIC L. PARKER** dated the 8th day of August, A.D., 2001 before me,

NOTARY PUBLIC

Exhibit 'E'



# EXTRAORDINARY

# OFFICIAL GAZETTE

# BAHAMAS

## PUBLISHED BY AUTHORITY

NASSAU                5th July, 1978

214            OFFICIAL GAZETTE

"costs' includes fees, charges, disbursements, expenses and remuneration;

"the Court" means the Supreme Court or any one or more judges thereof, whether sitting in court or in chambers, or the Registrar;

"taxed costs" means costs taxed in accordance with this Order;

"taxing master" means the Registrar.

(2) In this Order references to a fund, being a fund out of which costs are to be paid or which is held by a trustee or personal representative, including any references to any estate or property, whether real or personal, held for the benefit of any person or class of persons; and references to a fund held by a trustee or personal representative include references to any fund to which he is entitled (whether alone or together with any other person) in that capacity, whether the fund is for the time being in his possession or not.

**Application (O.59, r.2).**

2.—(1) Where by virtue of any Act the costs of or incidental to any proceedings before an arbitrator or umpire or before a tribunal or other body constituted by or under any Act, not being proceedings in the Supreme Court, are taxable in the Supreme Court, the following provisions of this Order, that is to say, rule 7, (4) and (5), rule 8(5) rules 13 and 14, rule 15(1), rule 16, rule 19 (except paragraph 3), rules 20 and 24 and rules 31 and 33, shall have effect in relation to proceedings for taxation of those costs as they have effect in relation to proceedings for taxation of those costs of or arising out of proceedings in the Supreme Court.

(2) The costs of and incidental to proceedings in the Supreme Court shall be in the discretion of the Court and that Court shall have full power to determine by whom and to what extent the costs are to be paid, and such powers and discretion shall be exercised subject to and in accordance with this Order.

## ENTITLEMENT TO COSTS

**When costs to follow the event (O.59, r.3).**

3.—(1) Subject to the following provisions of this Order, no party shall be entitled to recover any costs of or incidental to

any proceedings from any other party to the proceedings except under an order of the Court.

(2) If the Court in the exercise of its discretion sees fit to make any order as to the costs of or incidental to any proceedings, the Court shall, subject to this Order, order the costs to follow the event, except when it appears to the Court that in the circumstances of the case some other order should be made as to the whole or any part of the costs.

(3) The costs of and occasioned by any amendment made without leave in the writ of summons or any pleading shall be borne by the party making the amendment, unless the Court otherwise orders.

(4) The costs of and occasioned by any application to extend the time fixed by these rules, or any direction or order thereunder, for serving or filing any document or doing any other act (including the costs of any order made on the application) shall be borne by the party making the application, unless the Court otherwise orders.

(5) If a party on whom a notice to admit facts is served under Order 27, rule 2, refuses or neglects to admit the facts within 7 days after the service on him of the notice or such longer time as may be allowed by the Court, the costs of proving the facts shall be paid by him, unless the Court otherwise orders.

(6) If a party —

   (a) on whom a list of documents is served in pursuance of any provision of Order 24, or

   (b) on whom a notice to admit documents is served under Order 27, rule 5,

gives notice of non-admission of any of the document in accordance with Order 27, rule 4(2) or 5(2), as the case may be, the costs of proving that document shall be paid by him, unless the Court otherwise orders.

(7) Where a defendant by notice in writing and without leave discontinues his counterclaim against any party or withdraws any particular claim made by him therein against any party, that party shall, unless the Court otherwise directs, be entitled to his costs of the counterclaim or his costs occasioned by the claim withdrawn, as the case may be, incurred to the time of receipt of the notice of discontinuance or withdrawal.

me


(8)  Where a plaintiff accepts money paid into Court by a defendant who counterclaimed against him, then, if the notice of payment given by that defendant stated that he had taken into account and satisfied the cause of action or, as the case may be, all the causes of action in respect of which he counterclaimed, that defendant shall, unless the Court otherwise directs, be entitled to his costs of the counterclaim incurred to the time of receipt of the notice of acceptance by the plaintiff of the money paid into court.

(9)  Where any person claiming to be a creditor —

     (a) seeks to establish his claim to a debt under any judgment or order in accordance with Order 44, or

     (b) comes in to prove his title, debt or claim in relation to a company in pursuance of any such notice as is mentioned in the Companies Act

he shall, if his claim succeeds, be entitled to his costs incurred in establishing, it, unless the Court otherwise directs, and, if his claim or any part of it fails, may be ordered to pay the costs of any person incurred in opposing it.

(10)  Where a claimant is entitled to costs under paragraph (9), the amount of the costs shall be fixed by the Court unless it thinks fit to direct taxation and the amount fixed or allowed shall be added to the claimant's debt.

(11)  Where a claimant (other than a person claiming to be a creditor) having established a claim to be entitled under a judgment or order in accordance with Order 44 has been served with notice of the judgment or order pursuant to rule 3 or 15 of that Order, he shall, if he enters an appearance, be entitled as part of his costs of action (if allowed) to costs incurred in establishing his claim, unless the Court otherwise directs; and where such a claimant fails to establish his claim or any part of it he may be ordered to pay the costs of any person incurred in opposing it.

**Stage of proceedings at which costs to be dealt with (O.59, r.4).**

4.  Costs may be dealt with by the Court at any stage of the proceedings or after the conclusion of the proceedings; and any order of the Court for the payment of any costs may, if the Court thinks fit, require the costs to be paid forthwith notwithstanding that the proceedings have not been concluded. '

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 00-3741-Civ-Huck
Magistrate Judge Brown

SUN TRUST BANK, MIAMI, as Personal Representative
of the Estate of CHAD HUMPHREYS, Deceased.

Plaintiff,

vs.

SUN INTERNATIONAL HOTELS LIMITED,
a Bahamian Company; and SUN INTERNATIONAL
BAHAMAS LIMITED, a Bahamian Company,

Defendants

_____/

CERTIFICATE

**THIS IS** the Exhibit marked "Exhibit F" mentioned and referred to in the

Affidavit of **CEDRIC L. PARKER** dated the 8th day of August, A.D., 2001 before me,

*Miriam Curling*

NOTARY PUBLIC

. H E

# SUPREME  COURT
# PRACTICE
## 1976

VOLUME  1

PART 1

LONDON

SWEET & MAXWELL LTD.          STEVENS & SONS LTD.
11 NEW FETTER LANE, LONDON EC4P 4EE

BUTTERWORTH & CO. (PUBLISHERS) LTD.
88 KINGSWAY WC2B 6AB

In *Williams* v. *Buchanan*, 7 T. L. R. 226, C. A., the defendant was sued on his guarantee. He served his co-guarantor B with a third party notice. B appeared, delivered defence and appeared by separate counsel at trial. The plaintiff's action against defendant was dismissed. Held that B must bear his own costs. See *Thomas* v. *Times Book Co., Ltd.*, [1966] 1 W. L. R. 911 where plaintiff was ordered to pay the costs of the third and fourth parties.

**Costs, Indemnity as to.**—If the plaintiff succeeds against the defendant and the latter against the third party, then where the defendant is entitled to an indemnity from the third party, and has been ordered to pay the plaintiff's costs as between party and party, the defendant is entitled to judgment against the third party for the costs of the action between him and the plaintiff on the common fund basis, but they will only be allowed upon that basis upon taxation provided the order or judgment so direct. The costs of the proceedings between the defendant and the third party will normally be payable as between party and party (*Simpson* v. *British Industries' Trust*, 39 T.L.R. 286, and see Scton, p. 2072 (10), and note to *Maxwell* v. *British Thomson-Houston Co.* [1904] 2 K.B. 342, from which it appears that Kennedy J., had reconsidered his decision upon this point); see also *Hartas* v. *Scarborough*, 33 S.J., p. 661; *Born* v. *Turner, infra*; *The Millwall* [1905] P. 155; *Hooper* v. *Bromet, supra*; *Wilty* v. *Smith* [1894] 1 Ir.R. 153; *cf.* also *Shephcard* v. *Bray* [1906] 2 Ch. 235; [1907] 2 Ch. 571, C. A.; *Pidonz* v. *Benckendorf* (1913) 31 R.P.C. 67. Where the defendant appeals unsuccessfully from a judgment in favour of the plaintiff, and the third party does not sanction or take part in the appeal, the third party will not in the absence of special circumstances be ordered to pay to the defendant the costs of the appeal.

80,/2/86

### Transfer of Cause or Matter.

Where a party, on insufficient grounds, refuses to consent to a transfer, he may be ordered to pay costs if asked for by the notice of motion for transfer (*Cocq* v. *Hunaaparia Coffee Co.* (1869), L. R. 4 Ch. 415; *Orrell* v. *Busch* (1870), L. R. 5 Ch. 467; *Lucas* v. *Siggers* (1872), L. R. 7 Ch. 517; and see *Lyall* v. *Weldhen* (1874), L. R. 9 Ch. 287); but costs of letters asking for his consent should not be allowed against him on taxation unless expressly ordered (*Norton* v. *Fenwick* (1835), 84 L. J. Ch. 639).

82/2/87

--------

### ENTITLEMENT TO COSTS

#### When costs to follow the event (O. 62, r. 3).

3.—(1) Subject to the following provisions of this Order, no party shall be entitled to recover any costs of or incidental to any proceedings from any other party to the proceedings except under an order of the Court.

(2) If the Court in the exercise of its discretion sees fit to make any order as to the costs of or incidental to any proceedings, the Court shall, subject to this Order, order the costs to follow the event, except when it appears to the Court that in the circumstances of the case some other order should be made as to the whole or any part of the costs.

(3) The costs of and occasioned by any amendment made without leave in the writ of summons or any pleading shall be borne by the party making the amendment, unless the Court otherwise orders.

(4) The costs of and occasioned by any application to extend the time fixed by these rules, or any direction or order thereunder, for serving or filing any document or doing any other act (including the costs of any order made on the application) shall be borne by the party making the application, unless the Court otherwise orders.

(5) If a party on whom a notice to admit facts is served under Order 27, rule 2, refuses or neglects to admit the facts within 7 days after the service on him of the notice or such longer time as may be allowed by the Court, the costs of proving the facts shall be paid by him, unless the Court otherwise orders.

62/3

[ 929 ]

**62/3/1**

(6) If a party—

 (a) on whom a list of documents is served in pursuance of any provision of Order 24, or

 (b) on whom a notice to admit documents is served under Order 27, rule 5,

gives notice of non-admission of any of the documents in accordance with Order 27, rule 4 (2) or 5 (2), as the case may be, the costs of proving that document shall be paid by him, unless the Court otherwise orders.

(7) Where a defendant by notice in writing and without leave discontinues his counterclaim against any party or withdraws any particular claim made by him therein against any party, that party shall, unless the Court otherwise directs, be entitled to his costs of the counterclaim or his costs occasioned by the claim withdrawn, as the case may be, incurred to the time of receipt of the notice of discontinuance or withdrawal.

Under paragraph (7) a plaintiff can discontinue against a third party only by Summons and not by Notice of Discontinuance.

(8) Where a plaintiff accepts money paid into Court by a defendant who counterclaimed against him, if the notice of payment given by that defendant stated that he had taken into account and satisfied the cause of action or, as the case may be, all the causes of action in respect of which he counterclaimed, that defendant shall, unless the Court otherwise directs, be entitled to his costs of the counterclaim incurred to the time of receipt of the notice of acceptance by the plaintiff of the money paid into court.

(9) Where any person claiming to be a creditor—

 (a) seeks to establish his claim to a debt under any judgment or order in accordance with Order 44, or

 (b) comes in to prove his title, debt or claim in relation to a company in pursuance of any such notice as is mentioned in Order 102 rule 13

he shall, if his claim succeeds, be entitled to his costs incurred in establishing it, unless the Court otherwise directs, and, if his claim or any part of it fails, may be ordered to pay the costs of any person incurred in opposing it.

(10) Where a claimant is entitled to costs under paragraph (9), the amount of the costs shall be fixed by the Court unless it thinks fit to direct taxation and the amount fixed or allowed shall be added to the claimant's debt.

(11) Where a claimant (other than a person claiming to be a creditor) having established a claim to be entitled under a judgment or order in accordance with Order 44 has been served with notice of the judgment or order pursuant to rule 3 or 15 of that Order, he shall, if he enters an appearance, be entitled as part of his costs of action (if allowed) to costs incurred in establishing his claim, unless the Court otherwise directs; and where such a claimant fails to establish his claim or any part of it he may be ordered to pay the costs of any person incurred in opposing it.

(12) Where an application is made in accordance with Order 24, rule 7A, or Order 29, rule 7A, for an order under section 21 of the Administration of Justice Act 1969 or section 31 or 32 of the Administration of Justice Act 1970, the person against whom the order is

sought shall be entitled, unless the Court otherwise directs, to his costs of and incidental to the application and of complying with any order made thereon and he may, after giving the applicant 7 days' notice of his intention to do so, tax such costs and, if they are not paid within 4 days after taxation, sign judgment for them.

Amended by R.S.C. (Amendment No. 4) 1971 (S.I. 1971 No. 1269).

Rule 3 (1) only applies in relation to the right of a party to recover costs " from 82/3/2 any other party to the proceedings ", and will not therefore apply to the right of a mortgagee to retain costs out of a mortgaged property on redemption or to any other contractual right to costs out of a fund or from persons represented (but not themselves parties) to proceedings.

Rule 3 (7). This Rule appears to apply only to withdrawal of a counterclaim. If a defendant discontinues third party proceedings it would seem that the third party must obtain an order for his costs.

### Agreed Costs.

It is not the practice to pay out agreed costs to solicitors without the personal knowledge of the party interested in such payment (*Re Cosier*, [1898] W. N. 8), so that the Court will not substitute an agreed sum for a direction to tax until the personal waiver of taxation by the party out of whose fund the sum is to be paid has been produced (*ibid.*).

### Agreement as to Costs.

Where judgment is given for " £ . . . with costs to be taxed ", the parties may agree the costs, in which case the agreed costs will (in Q. B. D.) be added to the judgment on production of the agreement, with the leave of a Master indorsed, in the judgment office. Where the judgment is for " £ . . . and costs to be taxed or agreed ", the leave of a Master is not necessary. But in cases within r. 30, the costs must be taxed, not agreed. See (n.) to that rule. See also Legal Aid (General) Regulations 1971, regs. 18 and 29, Vol. 2, Part 9B, *infra*, as to the position where taxation has been directed under the Legal Aid Act 1974.

### " Costs to be Paid on Usual Undertaking."

After trial of an action counsel for the defendant may apply for a stay pending 82/3/3 appeal. In such a case the Judge often gives a stay for a specified number of days and if within that time the amount awarded is paid into Court and the appeal entered, execution is further stayed until the determination of the appeal, also the taxation of costs proceeds and the costs are paid by the defendant to the plaintiff's solicitor on his personal undertaking to return the same if the appeal be successful.

### Working Out Order.

Costs of suit include subsequent costs of working out the decree unless further consideration is reserved (*Krehl* v. *Park* (1875), L. R. 10 Ch. 334), and for an instance in bankruptcy, see *Re Lavey*, *ex p. Cohen and Cohen (No. 1)*, [1920] 3 K. B. 625. Costs of a conveyance, agreed to be made as a term of a compromise of an action, embodied in an order, are costs incurred " in arriving at or giving effect to a compromise . . . to bring to an end any proceedings " within section 1 (5) of the Legal Aid and Advice Act, 1949 *(Clarendon Villas (No. 26) Hove Trusts, Copeland v. Houlton*, [1955] 1 W. L. R. 1072; [1955] 3 All E. R. 178).

### Abortive Action.

While an action was pending, the plaintiff's right of action was taken away by Act of Parliament. It was held that he was entitled to costs down to the date of the passing of the Act *(Orpen v. New Empire, Ltd.* (1931), 48 T. L. R. 8).

### Action of Review.

Costs of Former Action.—A plaintiff who successfully sues to set aside a judgment 82/3/4 wrongfully obtained against him in a former action is entitled to the costs of the former action as well as those of the action of review *(Sturrock v. Littlejohn* (1898), 68 L. J. Q. B. 165).

### Costs " In and About " an Action.

See (n.) to r. 2.

[ 931 ]

" Costs of the Day."

This means " all costs incurred and which will be thrown away " (*Burgoine* v. *Taylor* (1878), 47 L. J. Ch. p. 543) " in consequence of the postponement of a cause and not merely £10 " (*Lydall* v. *Martinson* (1877), 5 Ch. D. 780).

" Costs Reserved."

Rule 4 (1) (n.) " Reserved Costs ".

" Costs Thrown Away."

62/3/5     This is an order frequently made on an application to set aside a judgment. It is one of the penalties imposed upon a defendant who, having failed to observe the rules as to appearance or delivery of defence, has allowed judgment to be entered by default. The words " costs thrown away " include all costs reasonably incurred in enforcing the judgment such as execution and garnishee proceedings, but do not include bankruptcy proceedings which are outside the Action (*Andromeda, etc.* v. *Holme* (1923), 130 L. T. 329, C. A.). It may, however, be made a term of the order to set aside that the costs of bankruptcy proceedings shall be paid by the defendant. The words do not necessarily include the costs of the application to set aside. These should be specially provided for. See also (n) " Costs Thrown Away " to r. 9.

" Plaintiff's (or Defendant's) Costs in Cause."

This is a form of order the meaning of which is not always understood. In most cases the costs of a summons will be (i) costs in the cause, or (ii) plaintiff's (or defendant's) costs in any event. But there is a half-way order which involves that the party in whose favour it is made will get them if he wins his action, and will not have to pay them if he loses. This is an order in the form " plaintiff's (or defendant's) costs in cause ". It might be made where one of the parties acted unreasonably. Where an action is discontinued " costs in cause " are applicable to be considered as part of the costs of the defendant.

62/3/6     Costs Borne by Party Amending.—Effect in practice is the same as if the amendment had been made under an order giving the other side the costs " in any event ". If the plaintiff succeeds in the action, after amending under O. 20, r. 5, *supra*, the defendant is still entitled, in the absence of any order to the contrary, to bring in on the general taxation a bill of the costs of and occasioned by the amendment, and to have those costs deducted from the plaintiff's costs. There is usually no taxation of such costs against an assisted party unless his liability to pay has been determined under the Legal Aid Act 1974, s. 8 (1).

" Usual terms."

This is an abbreviation often to be found in an order giving leave to amend. Where a Master in the Queen's Bench Division indorses a summons " Leave to amend on usual terms ", the following words will appear in the order: " The costs incurred and thrown away by this amendment and the costs of any consequent amendment to be the (plaintiff's or defendant's) in any event ".

These words would appear to be equivalent to the phrase of North. J., in *Preston Corporation* v. *Fullwood Local Board* (*No.* 2) (1885), 34 W. R. 200. If any more extensive order is desired, special variation in the Master's indorsement should be obtained.

Adjournment.

62/3/7     Of Summons into Court in Ch. D.—Since an adjournment into Court is merely a continuation of the hearing in Chambers (*Leeds* v. *Lewis* (1857), 3 Jur. (N.S.) 1290), the costs of such adjournment follow the same rule as the costs in Chambers (*Dicken* v. *Homer* (1860), 2 L. T. 276; *Wallis* v. *Bastard* (1854), 2 W. R. 47). Where a valid objection to jurisdiction was first taken in Court the defendants were not allowed the costs of the adjournment (*Re Wm. Davies* (1888), 38 Ch. D. 210).

Of Trial.—Under O. 35, r. 3, this is usually granted on the terms of payment by the applicant of the actual costs of the day, that is, " such costs as have been incurred by the action standing in the paper for hearing on those days on which it stood in the paper " (*Lydall* v. *Martinson* (1877), 5 Ch. D. 780), or as in *Burgoine* v. *Taylor* (1878), 47 L. J. Ch., p. 543, " all costs incurred and which will be thrown away in consequence " thereof.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

*MIAMI DIVISION*

CASE NO. 00-3741-Civ-Huck
Magistrate Judge Brown

SUN TRUST BANK, MIAMI, as Personal Representative
of the Estate of CHAD HUMPHREYS, Deceased.

Plaintiff,

vs.

SUN INTERNATIONAL HOTELS LIMITED,
a Bahamian Company; and SUN INTERNATIONAL
BAHAMAS LIMITED, a Bahamian Company,

Defendants

_____/

### C E R T I F I C A T E

**THIS IS** the Exhibit marked "Exhibit G" mentioned and referred to in the

Affidavit of **CEDRIC L. PARKER** dated the 8th day of August, A.D., 2001 before me,

*Miriam Curling*

NOTARY PUBLIC

THE

# SUPREME COURT PRACTICE
## 1976

VOLUME 1

PART.1

LONDON

SWEET & MAXWELL LTD.        STEVENS & SONS LTD.
11 NEW FETTER LANE, LONDON EC4P 4EE

BUTTERWORTH & CO. (PUBLISHERS) LTD.
88 KINGSWAY WC2B 6AB

# ORDER 33

## (R. S. C. 1965)

## Place and Mode of Trial

**Place of trial** (O. 33, r. 1).

33/1 1. Subject to the provisions of these rules, the place of trial of a cause or matter, or of any question or issue arising therein, shall be determined by the Court and shall be either the Royal Courts of Justice or one of the other places at which sittings of the High Court are authorised to be held for the trial of those proceedings or proceedings of the class to which they belong.

---

Amended by R.S.C. (Amendment No. 5) 1971 (S.I. 1971 No. 1955).

33/1/1 **Scope of Order.**—This Order is new, but it conveniently gathers together several rules in the different parts of the former R. S. C. dealing with the place and mode of trial. The only material change is the omission of the former O. 34 (except r. 2) dealing with Special Cases, (see now rr. 2 & 3, *infra*).

**Effect of Rule 1.**—This Rule is new in the sense that it did not appear in this form in the previous R. S. C., but it makes no change of substance. The trial of a cause or matter in the High Court or of any question or issue arising therein must take place either at the Royal Courts of Justice or at a place at which the High Court is authorised to sit for the trial of such cause or matter, question or issue. The Lord Chancellor may give an *ad hoc* direction authorising the Court to sit at a specified place *e.g.* at Iken, Suffolk (see *St. Edmundsbury and Ipswich Diocesan Board of Finance* v. *Clark* [1973] Ch. 323; [1973] 2 W.L.R. 1042, 1048; [1973] 3 All E.R. 902). An exception exists in the case of a trial or other proceeding before a Circuit judge discharging the functions of an Official Referee which may be "at any place which appears to him to be convenient" (O. 36, r. 4 (3), *infra*). The amendment of Rule 1 embodies the radical changes effected by the Courts Act 1971, which by s. 1 abolished courts of assize and by s. 2 (1) enables sittings of the High Court to be held, and any other business of the High Court to be conducted, at any place in England or Wales. Subject to Rules of Court, the places at which the High Court sits outside the Royal Courts of Justice and the days and duties of such sittings are to be determined in accordance with directions given by or on behalf of the Lord Chancellor (s. 2 (2) of the Act).

33/1/2 **Queen's Bench actions.**—The places at which sittings of the High Court are authorised to be held, which will apply in particular to the trial of Queen's Bench actions, are the following trial centres, namely:

*In the Midland and Oxford Circuit*, Birmingham, Lincoln, Nottingham, Stafford, Warwick.
*In the North-Eastern Circuit*, Leeds, Newcastle upon Tyne, Sheffield, Teeside.
*In the Northern Circuit*, Carlisle, Liverpool, Manchester, Preston.
*In the South-Eastern Circuit*, Greater London, Norwich.
*In the Wales and Chester Circuit*, Caernarvon, Cardiff, Chester, Mold, Swansea.
*In the Western Circuit*, Bodmin, Bristol, Exeter, Winchester.

(See Directions given by the Lord Chancellor in the House of Lords [1972] 1 W.L.R. 1 and Directions given by him in the House of Lords, June 14, 1973.

For the addresses and telephone numbers of the Circuit Administrators and the Court Administrators, see Vol. 2, Part 4 I, "Circuit Arrangements," paras. 1045 *et seq.*, *infra*.

33/1/3 **Chancery actions.**—The places at which sittings of the High Court are authorised to be held for the trial of causes or matters in the Chancery Division out of London are Leeds, Liverpool, Manchester, Newcastle upon Tyne and Preston (see *Practice Direction (Chancery: Proceedings outside London)* [1972] 1 W.L.R. 1; [1972] 1 All E.R. 103).

---

**Mode of trial** (O. 33, r. 2).

33/2 2. Subject to the provisions of these rules, a cause or matter, or any question or issue arising therein, may be tried before—

cv-03741-PCH Document 68 Entered on FLSD Docket 08/10/2001 Page

(a) a judge alone, or
(b) a judge with a jury, or
(c) a judge with the assistance of assessors, or
(d) an official referee with or without the assistance of assessors, or
(e) a master, or
(f) a special referee.

Effect of Rule.—This Rule is new, but it conveniently tabulates the different modes **33/2/1**
of trial in the High Court.
For trial by a Circuit judge discharging the functions of an Official Referee, see
O. 36, rr. 1–7, *infra*: by Special Referee, see O. 36, r. 8, *infra*: by Master, see O. 36,
r. 9, *infra*, and O. 14, r. 6 (2), *supra*.

### Time, etc. of trial of questions or issues (O. 33, r. 3).

3. The Court may order any question or issue arising in a cause **33/3**
or matter, whether of fact or law or partly of fact and partly of law,
and whether raised by the pleadings or otherwise, to be tried before,
at or after the trial of the cause or matter, and may give directions as
to the manner in which the question or issue shall be stated.

Effect of Rule.—This Rule is taken from part of the former O. 34, r. 9, which dealt **33/3/1**
with special cases by order before trial, but is wider in terms, for unlike the former
rule which only applied to questions of law, this Rule applies also to questions of fact
and questions partly of fact and partly of law.
Under this Rule, the Court can, if necessary, direct that a question or issue
shall be stated by or in the form of a special case (see *Duncan* v. *Lambeth London
Borough Council*, [1968] 1 Q.B. 747; [1968] 2 W.L.R. 88), but the parties cannot
under this Rule agree between themselves, with obtaining the order of the Court,
to state questions of law in the form of a special case. If a special case is
directed by the Court, it should be signed by counsel if settled by him, otherwise it
should be signed by the solicitors or by the parties if appearing in person. The
former practice with regard to the filing of a special case and its entry for argument
no longer prevails.
This Rule should be read with O. 18, r. 11, *supra* (raising a point of law on the
pleading) and with r. 4 (2), *infra* (trial of preliminary issues).
Under this Rule the Court has power to try a preliminary question of law at the
outset. Such question may have been raised on the pleadings (see O. 18, r. 11 (nn.))
and may be ordered to be tried on the pleadings or on a case stated or an agreed
statement of facts, and such order will be made on the hearing of a summons for
directions if not earlier. Or the Court may at the trial order a question of law to be
tried first (see *Pooley* v. *Driver*, 5 Ch. D. 460).
This Rule may be conveniently employed in commercial cases for the decision of
preliminary questions of law.
Only such questions of law can properly be raised as preliminary issues as must
necessarily arise in the action (*Republic of Bolivia* v. *Bolivian Navigation Co.*, 24
W. R. 361), and the Court will not decide fictitious questions or questions in which
those who are interested, or are likely to be, are not present or are not *in esse*
(*Bright* v. *Tyndall*, 4 Ch. D. 189, and cases there referred to; *Sumner* v. *William
Henderson & Sons*, [1963] 1 W. L. R. 823; [1963] 2 All E. R. 712n., C. A.
There are disadvantages in ordering the trial of a preliminary point of law on
assumed facts (see per Lord Wilberforce and per Lord Pearson in *Att.-Gen.* v.
*Nissan* [1969] 2 W.L.R. 926; [1969] 1 All E.R. 629, H.L.).
Where for the purposes of deciding questions of law it is necessary or desirable
to ascertain the facts beyond those that appear in the pleadings, the Court should
not order the trial of those questions as a preliminary point of law, especially where
the law is itself unsettled or obscure, e.g., whether a Colonel in the U.S. Air Force
is entitled to absolute privilege in an action against him for libel by a civilian
employee in the same Force (*Richards* v. *Naum* [1967] 1 Q.B. 620. C.A.).
An " issue " which involves dealing with the whole subject-matter of the action
without any evidence is not a preliminary point and should not be ordered to be
tried as such (*Radstock Co-operative and Industrial Society Ltd.* v. *Norton-Radstock
U.D.C.* [1968] Ch. 605; [1968] 2 W.L.R. 1214, C.A.).

[ 527 ]

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 00-3741-Civ-Huck
Magistrate Judge Brown

SUN TRUST BANK, MIAMI, as Personal Representative
of the Estate of CHAD HUMPHREYS, Deceased.

Plaintiff,

vs.

SUN INTERNATIONAL HOTELS LIMITED,
a Bahamian Company; and SUN INTERNATIONAL
BAHAMAS LIMITED, a Bahamian Company,

Defendants

_____/

CERTIFICATE

**THIS IS** the Exhibit marked "Exhibit H" mentioned and referred to in the

Affidavit of **CEDRIC L. PARKER** dated the 8th day of August, A.D., 2001 before me,

*Miriam Curling*

NOTARY PUBLIC



# THE STATUTE LAW

OF

# THE BAHAMAS

### 1799—1987

IN FORCE ON THE

### 30th June, 1987

As amended by the Statute Law Revision Act, 1987.

### REVISED EDITION.

Prepared under the authority of The Law Reform and Revision Act, 1975

BY

SIR GORDON BRYCE, C.B.E.
of the Middle Temple, Barrister-at-Law.

IN EIGHT VOLUMES AND A SUPPLEMENTARY VOLUME

# VOLUME I

Containing The Constitution to Chapter 51

PUBLISHED BY THE GOVERNMENT OF THE COMMONWEALTH OF THE BAHAMAS

PRINTED BY
A. Wheaton & Co Ltd, Exeter
1988

## CHAPTER 47.

### JURIES.

AN ACT TO MAKE BETTER PROVISION FOR THE SELECTION OF
PERSONS TO SERVE AS JURORS IN THE SUPREME COURT AND
FOR THE REGULATION OF TRIALS BY JURY THEREIN.

*30 of 1967.*
*3 of 1971.*
*E.L.A.O., 1974.*
*2 of 1980.*

[*15th November, 1967.*]

[*Commencement 1st January, 1968.*]

### PRELIMINARY.

1. This Act may be cited as the Juries Act.                    Short title.

2. In this Act unless the context otherwise requires          Interpretation.

"court" means the Supreme Court;

"jury service" in relation to any person means
    service as a juror in any civil or criminal
    proceedings triable by jury at any sessions;

"Registrar" means the Registrar of the court, or his
    deputy;

"revising panel" means the panel constituted by
    section 6 of this Act;

"sessions district" has the meaning assigned to it by
    section 5 of this Act;

"sessions" means a sessions of the court.

### JURORS.

3.—(1) Every male person between the ages of
twenty-one and sixty years and resident in a sessions
district shall be qualified for jury service.

Qualifications
for jury service.

(2) Any female person between the ages of twenty-
one and sixty years resident in a sessions district may
apply in the manner prescribed by subsection (3) of this
section to have her name entered upon the jury list and
thereupon she shall be qualified for jury service.

*2 of 1980, s. 2.*

(3) Any woman who desires to be enrolled for jury
service may, on or before the first day of November in

*2 of 1980, s. 2.*



any year, apply in writing to the Registrar, stating her full name and address and her date of birth; and upon receipt of any such application, the Registrar shall, subject to subsection (4) of this section, cause it to be taken into account by the revising panel in the preparation of the jury list.

*2 of 1980, s. 2.*

(4) Any woman who desires to have her name removed from the jury list for any year may on or before the first day of December of the preceding year apply in writing to the Registrar and upon receipt of any such application, the Registrar shall cause it to be taken into account by the revising panel in the preparation of the relevant jury list for the next ensuing year.

**Exemptions and disqualifications from jury service.**
**First Schedule.**

4. Notwithstanding anything contained in section 3 of this Act —

(a) the persons specified in the First Schedule shall be exempt from jury service to the extent set out in that Schedule; and

**Second Schedule.**

(b) the persons specified in the Second Schedule shall be disqualified from jury service.

**Sessions districts.**

5.—(1) The Island of New Providence shall be a sessions district for the holding of sessions of the court.

*E.L.A.O. 1974.*

(2) The Chief Justice may by order declare any one or more Out Island Districts or part thereof to be a sessions district for the holding of sessions of the court.

(3) No juror shall be required to perform jury service otherwise than at a sessions of the court held within the sessions district in which he is for the time being resident and for which his name is entered in the jurors book as hereinafter provided.

### JURY LIST.

**Revising panel.**

6. There shall be a revising panel, consisting of the Registrar, who shall be Chairman, the Parliamentary Registrar and the Provost Marshall or his deputy.

**Jury lists.**

7.—(1) It shall be the duty of the revising panel, on or before the fifteenth day of December in each year, to

upon the trial thereof to separate and depart from the court during any adjournment of such trial before they have retired to consider their verdict upon each such juror taking the oath prescribed by section 13(3) of the Oaths Act. Ch. 48.

(2) The following provisions shall apply whenever the jury have not been permitted to separate—

(a) a proper provision shall be made for preventing the jury from holding communication with any person;

(b) the judge may allow one or more of the jurors to separate from the other jurors;

(c) jurors who are allowed to separate from the other jurors shall not hold communication with other persons except with the leave of the court;

(d) jurors who are allowed to separate shall remain in the charge of the officer of the court who has charge of them.

**Discharge of jury in certain circumstances.**

29.—(1) The judge may, in his discretion, in case of any emergency or casualty rendering it, in his opinion, expedient for the ends of justice so to do, discharge the jury without their giving a verdict, and direct a new jury to be empanelled during the sessions or may postpone the trial on such terms as justice may require.

(2) If the judge becomes incapable of trying the case or directing the jury to be discharged, the Registrar shall discharge the jury.

(3) Without prejudice to the power of the judge to discharge the jury under the provisions of subsection (1) of this section, whenever a juror dies or fails to appear at any adjournment of the trial or becomes too ill to continue to serve or if it appears to the judge that a juror empanelled is not indifferent between any of the parties to the proceedings, then in any such case the judge may in his discretion if all the parties consent, proceed with the trial with the remaining eleven jurors, and take their verdict which shall then have the same effect as the verdict of the whole number.

## MISCELLANEOUS.

*Jurors' fees.*

30.—(1) Every juror who is sworn in any case shall be entitled to a fee of five dollars for each day or part of a day during which he attends at the court during the trial of the case for which he is so sworn.

(2) Every juror who attends court during any sessions for trial of criminal cases shall be entitled to a fee of three dollars for each day on which he is required so to attend but is not sworn to try any such case.

(3) In every civil case listed for trial with a jury the amount of sixty dollars on account of jurors'fees shall be paid to the Registrar by the plaintiff before the jury is sworn and if it is not so paid the court shall, unless it sees fit to allow an adjournment, dismiss the case or enter judgement for the defendant.

(4) All jurors' fees in civil cases shall be recoverable as a fee of court from the plaintiff but may be allowed as costs in the cause against any other party to the proceedings.

Accommodation, maintenance and refreshment of jurors.

**31.**—(1) In any case where the members of the jury empanelled are required by the court not to separate before returning their verdict, they shall be entitled to be reasonably accommodated and maintained at the public expense under arrangements to be made by or on behalf of the Registrar.

(2) Reasonable refreshment at the public expense shall be provided for members of a jury empanelled in any case when they have retired to consider their verdict.

View.

**32.** Where in any case it is made to appear to the judge that it will be for the interests of justice that the jury who are to try or are trying the issue in the case, should have a view of any place, thing, or person connected with the issue, he may direct a view to be had, in such manner and upon such conditions as he may think proper.

Fines for non-attendance or refusal to serve.

**33.**—(1) If any person, having been duly summoned to attend as a juror, does not attend in obedience to the summons at the first sitting of the court and at every adjournment thereof upon being openly called in court, or if he departs from the court during its sitting without leave of the judge and without reasonable excuse the court may impose on him a fine of not more than one hundred dollars.

(2) If any person, having been duly summoned to serve as a juror, refuses to serve when required by the court so to do, or if, after having been duly sworn he without leave departs the court before verdict given or before he is regularly discharged, the court may impose on him a fine of not more than one hundred dollars.

(3) The judge may, during the same sessions, remit or reduce any such fine upon sufficient cause shown to him in open court, and he may within five days after the close of the sessions, remit or reduce the fine upon sufficient cause shown by affidavit.

(4) All fines imposed under the provisions of this section shall be recoverable by distress and sale of the goods of the person fined by warrant of the court signed by the Registrar together with the costs of recovery thereof; and if sufficient goods of the defaulter are not found to satisfy the fine and costs he may be committed to prison by warrant under the hand of the judge for such period not exceeding three months as the judge considers fit.

**34.** The judge may at any time discharge any person summoned as a juror from further attendance on the court, or excuse him from attendance at any sessions or for any period during a sessions. <span style="float:right">Release of juror from attendance.</span>

**35.** The Committee appointed under section 29 of the Supreme Court Act may make rules of court generally for the better carrying out of any of the purposes or provisions of this Act. <span style="float:right">Rules. Ch. 41.</span>

**36.** Nothing in this Act contained shall extend or be construed to extend to alter, abridge or affect any power or authority which the court or judge now has, or any practice or form in regard to trials by jury, jury process, juries or jurors, except in those cases only where any such power or authority, practice or form is repealed or altered by this Act, or is or shall be inconsistent with any of the provisions thereof. <span style="float:right">Saving.</span>

" FIRST SCHEDULE (Section 4(a))

Persons exempted from Jury service.

1. The Governor-General and his personal staff.

2. Judges of the Court of Appeal and of the Supreme Court.

3. Ministers.

4. Members of the Senate and the House of Assembly.

5. Counsels and Attorneys in actual practice and their clerks.

6. Registered medical practitioners, dental and veterinary surgeons in actual practice.

*Repealed and Replaced by sect. 3 of No. 11 of '88*

UNITED STATES DISTRICT COURT
*SOUTHERN DISTRICT OF FLORIDA*

MIAMI DIVISION

CASE NO. 00-3741-Civ-Huck
Magistrate Judge Brown

SUN TRUST BANK, MIAMI, as Personal
Representative of the Estate of CHAD
HUMPHREYS, Deceased.

Plaintiff,

vs.

SUN    INTERNATIONAL    HOTELS
LIMITED, a Bahamian Company; and SUN
INTERNATIONAL BAHAMAS LIMITED,
a Bahamian Company,

Defendants

_____/

AFFIDAVIT OF CEDRIC L. PARKER

_____/